IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

PLAUTZ V. PLAUTZ

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

LAURA E. PLAUTZ, APPELLEE,

V.

MICHAEL R. PLAUTZ, APPELLANT, AND THEODORE WILLIAMS AND
SUSAN WILLIAMS, HUSBAND AND WIFE, INTERVENORS-APPELLEES,
AND STATE OF NEBRASKA, APPELLEE.

Filed November 6, 2018.    No. A-17-1017.

Appeal from the District Court for Lancaster County: ROBERT R. OTTE, Judge. Affirmed in part, and in part remanded with directions.

Matt Catlett, of Law Office of Matt Cattlett, for appellant.

Paul E. Galter for appellee Laura E. Plautz and intervenors-appellees.

Patrick F. Condon, Lancaster County Attorney, and Braden W. Storer for appellee State of Nebraska.

MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Michael R. Plautz and Laura E. Plautz were divorced in 2009, and Laura was awarded custody of the parties' two children. In 2014, Michael filed a complaint to modify the decree, asking the court to grant him custody of the children. Laura's parents, Theodore Williams and Susan Williams, were allowed to intervene in the modification proceeding. The district court for Lancaster County ultimately awarded the Williamses custody of the children, subject to Michael's and Laura's parenting time. Michael appeals.

- 1 -

Michael also appeals from the district court's decision to deny his motion to vacate a previous order which found him in contempt for failure to pay child support after a contempt action was initiated by the State.

We affirm the orders of the district court, except that we remand the issue of Michael's parenting time back to the district court with directions.

## II. BACKGROUND

Michael and Laura were married in 1999, and are the parents of two children, Keaton (born in 1999) and Makenna (born in 2003). Michael and Laura were divorced in 2009. In their divorce decree, the district court approved the parties' parenting plan agreement, which addressed custody, parenting time, and child support. Laura was awarded legal and physical custody of the children; Michael was awarded parenting time every other weekend, one evening each week, and 3 weeks each summer. A holiday parenting time schedule was also established. Michael was ordered to pay child support in the amount of $875 per month for two children, and $600 per month when there is only one minor child.

### 1. MODIFICATION PROCEEDINGS

In September 2014, Michael filed a "Complaint for Modification and Equitable Credit" and a "Motion for Temporary Custody and Temporary Suspension of Child Support; Notice of Hearing." He alleged in his complaint that since the entry of the decree there had been a material and substantial change in circumstances justifying a modification of custody, parenting time, and child support, in that Laura had "habitually failed and/or refused to provide necessary care, subsistence, and/or supervision to the parties' minor children" and it was therefore no longer in the children's best interests for Laura to have custody. He alleged that since October 2013, the children had primarily resided with the Williamses. Michael asked the court to award him sole legal and physical custody of the children, and order Laura to pay child support. He further alleged that he should be given an equitable credit with respect to any child support due and payable by him since October 2013 to the extent that the children were not in Laura's physical care, control, or custody. Following a hearing in October 2014, Michael's motion for temporary relief was overruled. In December, Laura filed an answer to Michael's complaint, and denied the allegations contained therein.

In August 2015, Michael again filed a motion for temporary custody and temporary suspension of child support. In September, the Williamses filed a complaint for intervention seeking an order granting them physical custody of the children; the district court sustained their request to intervene as third-party defendants in October. Michael's motion for temporary custody and temporary suspension of child support was denied on November 4.

Trial took place on November 6 and 16, 2015, and the matter was taken under advisement. The evidence from trial will be set forth as relevant later in this opinion. After the trial, Laura and the Williamses filed some additional motions, which they ultimately withdrew in February 2016.

On April 28, 2016, the district court filed a "Temporary Order." The court's findings will be set forth as relevant later in this opinion. The court ordered that "the legal custody of Keaton and Makenna shall be placed, temporarily, with the Court." Physical custody was placed with the Williamses. Michael and Laura were awarded "temporary parenting time" with the children. The

court suspended Michael's child support from October 1, 2014, until February 28, 2016, because such support was received by Laura but not used for support of the children; any amounts paid during that time were to be credited toward the amount of arrears pending as of February 28. Michael was ordered to pay temporary child support to the Williamses beginning on March 1; $875 per month for two children, and $575 per month for one child. The court ordered that the matter be set "for further hearing on October 20, 2016 . . . for one-half day for further evidence regarding this Court's temporary order."

After the October 2016 hearing, the district court filed an order in March 2017, which continued the April 2016 temporary order, and set the matter for final hearing in May 2017. The evidence from the final hearing will be set forth as relevant later in this opinion.

The district court entered an order on June 14, 2017. The court granted the legal and physical custody of the children to the Williamses, subject to reasonable rights of parenting time for Michael and Laura, as set forth in an attached parenting plan. Additional findings of the district court will be set forth as necessary later in this opinion.

Michael filed a motion to alter or amend judgment. In its order filed on August 23, 2017, the district court generally rejected Michael's arguments with regard to custody and the Williamses' intervention in the action. The court did agree with Michael's argument that a child support worksheet should be attached to the June order. Therefore, the court ordered that the June 14 order "should be amended by attaching thereto the child support calculation worksheet attached to the Decree of dissolution of Marriage filed by the Court on August 25, 2009," and by adding further language regarding child support payments, information reporting, and income withholding.

## 2. CONTEMPT PROCEEDINGS

In August 2016, the State initiated contempt proceedings against Michael for failure to pay child support. In an order filed on February 9, 2017, the district court found Michael to be in contempt of court. He was "committed to the Lancaster County jail for 30 days," but execution of the sentence was suspended so long as he paid $875 per month on current child support and $50 "on arrearage" commencing March 1; if Michael complied with the payment schedule for 12 consecutive months, he would be purged of contempt and the sentence would be deemed null and void. On June 19, Michael filed a "Motion to Vacate and Strike," which was denied by the district court on August 23.

## 3. APPEAL

Michael appeals "the final 'Order' filed by the Court on August 23, 2017, and other prior orders and rulings of the Court[.]"

## III. ASSIGNMENTS OF ERROR

Michael assigns 15 errors to the district court, which we have summarized and consolidated as follows. He claims the district court erred by (1) not granting Michael's September 2014 motion for temporary custody of the children and suspension of child support, (2) allowing the Williamses to intervene, (3) not permanently awarding custody to Michael in April 2016, and instead issuing temporary orders and ordering further evidentiary hearings, (4) permanently awarding custody of

- 3 -

the children to the Williamses in June 2017, (5) delegating to the Williamses the court's sole authority and responsibility to determine the time, manner, and extent of parenting time between Michael and the children, (6) failing to award Michael attorney's fees, and (7) denying Michael's motion to vacate and strike the orders to show cause and the final contempt order.

## IV. STANDARD OF REVIEW

Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Whilde v. Whilde*, 298 Neb. 473, 904 N.W.2d 695 (2017).

In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue. *Hotz v. Hotz*, 301 Neb. 102, 917 N.W.2d 467 (2018). A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id.*

Whether a party has the right to intervene in a proceeding is a question of law. *Wayne L. Ryan Revocable Trust v. Ryan*, 297 Neb. 761, 901 N.W.2d 671 (2017). When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusions. *Hotz v. Hotz, supra.*

A trial court's decision awarding or denying attorney fees will be upheld on appeal absent an abuse of discretion. *McCullough v. McCullough*, 299 Neb. 719, 910 N.W.2d 515 (2018).

## V. ANALYSIS

Initially, we note that Keaton's custody is no longer at issue as he is now 19 years old. Only the custody of Makenna, now 15 years old, is at issue on appeal.

### 1. SEPTEMBER 2014 MOTION FOR TEMPORARY CUSTODY AND SUSPENSION OF CHILD SUPPORT

Michael claims the district court erred by denying his September 2014 motion for temporary custody and temporary suspension of child support. However, the issue of temporary custody (and thus, temporary suspension of child support) became moot upon the entry of the district court's order determining permanent custody; there is no relief that can be afforded to Michael with regard to his request for temporary relief. See *State on behalf of Pathammavong v. Pathammavong*, 268 Neb. 1, 679 N.W.2d 749 (2004) (issue of temporary order only relevant from time it was ordered until it was replaced by order determining permanent custody; therefore, issues pertaining to temporary order are moot and need not be addressed on appeal). A moot case is one which seeks to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive. *Id.* See, also, *Coleman v. Kahler*, 17 Neb. App. 518, 766 N.W.2d 142 (2009) (issue of whether order denying request for temporary custody was proper was relevant only from time it was entered until it was replaced by order determining children's permanent custody; any issue relating to temporary order is moot).

## 2. ALLOWING WILLIAMSES TO INTERVENE

Michael argues the district court erred in adding the Williamses as parties to the action. Intervention is governed by statute. Neb. Rev. Stat. § 25-328 (Reissue 2016) states:

> Any person who has or claims an interest in the matter in litigation, in the success of either of the parties to an action, or against both, in any action pending or to be brought in any of the courts of the State of Nebraska, may become a party to an action between any other persons or corporations, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendants in resisting the claim of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant, either before or after issue has been joined in the action, and before the trial commences.

Neb. Rev. Stat. § 25-330 (Reissue 2016) states:

> The intervention shall be by complaint, which shall set forth the facts on which the intervention rests, and all the pleadings therein shall be governed by the same rules as other pleadings provided for in Chapter 25. If such complaint is filed during term, the court shall direct the time in which answers thereto shall be filed.

After Michael filed for temporary custody and temporary suspension of child support for a second time on August 31, 2015, the Williamses filed a complaint for intervention on September 23. The Williamses alleged that they were the grandparents of Keaton and Makenna, the minor children of the parties; the children had resided with and been supported by the Williamses continuously since early February 2014; the children were doing well under their care and it was in the best interests of the children that their physical custody be placed with the Williamses; the physical custody of the children was at issue and, for that reason, the court should permit the Williamses to become parties to the action so that appropriate orders could be entered in the best interests of the minor children; Laura placed the children with the Williamses and wished that the physical custody of the children be placed with the Williamses.

In an order filed on October 19, 2015, the district court stated that on October 16, the matter "came to be heard upon the Motion of [Laura] for an order permitting [the Williamses] to intervene as parties to this pending action." (Laura's motion does not appear in our record.) The order states, "Prior hereto, [the Williamses] filed a Complaint to Intervene *and on October 2, 2015, this Court entered an Order giving [Michael] seven days to answer said Complaint. No answer or other pleading has been filed by [Michael].*" (Emphasis supplied.) The court found "that such Motion should be granted and an Order should be entered authorizing and permitting [the Williamses] to intervene as Third-Party Defendants." The court, "Ordered, Adjudged and Decreed" "that the Motion of Plaintiff is hereby sustained and [the Williamses] are hereby added as Third-Party Defendants herein."

Michael claims that the only relief requested by the Williamses was that they be made parties to the action. He further claims that the district judge's statement that "on October 2, 2015, this Court entered an Order giving [Michael] seven days to answer said Complaint," was "plainly untrue" because at no time did the district judge file an order directing the time in which to answer the complaint for intervention. Brief for appellant at 35. Michael asserts:

Because the district court did not file a signed, written order directing the time in which answers to the [Williamses'] complaint for intervention be filed, and because the only relief requested in the complaint was that they be made parties to the actions, and because they did not plead a cause of action or an actual interest in the action, seek relief sought by either Michael or Laura, or resist relief sought by either Michael or Laura, or relief adverse to Michael and Laura, the district judge erred by "adding" [the Williamses] as "Third-Party Defendants."

*Id*. at 35-36.

Michael's claims regarding the content of the Williamses' complaint for intervention is contradicted by the actual language of the complaint. First, in their complaint for intervention, the Williamses did not merely request to be made parties to the action, they specifically sought physical custody of Keaton and Makenna. Second, the Williamses pled an actual interest in the action (custody of their grandchildren), aligned with the relief sought by Laura (they alleged she "wishes the physical custody of the children be placed with the Williamses"), and resisted relief sought by Michael (that he should get custody). They prayed for "orders concerning the custody and support of [the] minor children as it relates to Intervenors," and for such other relief the court "may [d]eem just and equitable." Accordingly, the Williamses complaint for intervention was sufficiently stated.

With regard to the district court's reference to an October 2, 2015, order giving Michael 7 days to answer the Williamses complaint, we do not have such an order in the record before us. Nor does the record contain any other order in which the district court directed the time in which answers to the complaint for intervention were to be filed. Nevertheless, after receiving the district court's October 19 order permitting the Williamses to intervene, Michael did not file an objection or otherwise apprise the court of its alleged erroneous reference to an October 2 order setting his answer deadline. Nor did Michael raise the issue of the Williamses' intervention when his modification action proceeded to trial in November. Prior to beginning trial, the district court specifically stated that the court was taking up "two matters, one is a complaint for modification . . . and then I have a complaint for intervention filed by the [Williamses]." Michael's attorney immediately thereafter indicated he was ready to proceed; no objection was made to proceeding on the Williamses' complaint for intervention.

In fact, Michael did not raise any issue with regard to the Williamses' intervention until he filed his motion to alter or amend in August 2017--nearly 2 years after Michael became aware of the permitted intervention. The time for Michael to complain has long passed. See *In re Estate of Clinger*, 292 Neb. 237, 872 N.W.2d 37 (2015) (litigant's failure to make timely objection waives right to assert prejudicial error on appeal). See, also, *In re Interest of Samantha L. & Jasmine L.*, 286 Neb. 778, 787, 839 N.W.2d 265, 272 (2013) ("[o]ne cannot silently tolerate error, gamble on a favorable result, and then complain that one guessed wrong").

Finally, Michael asserts that "the action had already been pending for approximately a year at the time the complaint for intervention was filed, which represents an inexcusable delay." Brief for appellant at 36. Despite his general claim of delay, Michael does not suggest that he was prejudiced in any way by the filing of the complaint for intervention 1 year after the modification

action was filed. And, as noted above, Michael did not make a timely objection to the Williamses intervening in the modification action.

We find no error in the district court's decision to allow the Williamses to intervene in the modification proceeding.

### 3. CUSTODY

#### (a) Testimony From Trial in November 2015

##### *(i) Mother's Testimony*

At trial, Laura conceded that she should not have custody of the children "at this time." Laura testified that she had been "dealing with an alcohol issue for a couple of years, over a couple of years." She had been in treatment more than once, and had "relapsed a couple of times" after treatment. Laura said that Michael did not exercise his parenting time on a regular basis. She asked that her parents, the Williamses, be allowed to have custody of Keaton and Makenna and said it would be in the children's best interests to "reside with my parents."

##### *(ii) Grandparents' Testimony*

Susan testified that the children have resided with her and her husband since January 2014. Laura did not live in the Williamses' home "at the present time," but had lived with them off and on since January 2014. When Laura was not residing with the Williamses, she was at her boyfriend's house or in residential treatment. Susan asked the court to award her and her husband custody of the children because "they've been with us for two years, and there hasn't been a father there."

Susan testified that after the children began living with her and her husband, Michael first saw the children on Father's Day 2014 (June). From January to June 2014 he did not visit the children or call Susan and request time to visit the children (on cross-examination, Susan stated that from January to June she had no communication with Michael and did not let him know that the children were living with her). From June until mid-October, Michael did exercise his parenting time of every other weekend and Wednesdays. After the temporary custody hearing in mid-October (following which the district court overruled Michael's request for temporary custody and temporary suspension of child support) until the first week of April 2015, Michael did not have any parenting time with the children. Michael exercised two weekends of parenting time in April. Then, he exercised no parenting time until September--when he saw the children twice, one dinner and then one weekend. Michael did not request parenting time in October or November.

Susan testified that the children were doing very well. They had perfect attendance; Makenna got almost all A's, "[a] couple of B pluses maybe." When Susan was asked if she believed it was in the children's best interests to continue to reside with her and her husband, at least until such time as Laura can rehabilitate herself, Susan said, "Yes, I do." Theodore agreed with Susan's testimony. He testified that he would like the children to remain with him and Susan, and believed that would be in the children's best interests.

##### *(iii) Father's Testimony*

Michael believed it was in the children's best interests that he be awarded their custody. Michael acknowledged that he had not always exercised his full allotment of parenting time;

although he said the children did live with him at different periods of time prior to 2014. Michael's girlfriend also testified that the children lived with them for periods of time between 2009 and 2014 (although she defined "lived with" as "more than a Wednesday -- every Wednesday or every other weekend.") Michael testified that during the 2012-13 school year, Keaton "might have lived with me for a good six months, maybe even nine months of that year." Michael said that Makenna lived with him from "probably September or October" to about Christmastime 2012. Contrary to Michael's testimony, Laura testified there was "a brief period" in 2012 when Keaton stayed with Michael, but "there was never an extended period of time that Makenna ever lived or Keaton lived with [Michael]"; Keaton stayed with Michael "[a]t best maybe four to six weeks." Michael testified that after Keaton went back to live with Laura, Michael "just kind of, you know, stopped getting phone calls answered and I just didn't hear from . . . either of them."

Michael testified that he went to jail for 23 days in the fall of 2013 for not paying child support. He exercised his 2013 Christmas break parenting time. From January to April 2014, he had parenting time with his children "[m]aybe once or twice." "I was trying . . . but . . . I wasn't getting phone calls back so, yeah, eventually, that just dwindles . . . there was no need to pick them up when I hadn't talked to them because I don't know, you know, that they are going to be there or what they are doing at that time, . . . if they are playing sports." Although Michael previously testified that it was not until December 2014 that he became aware that his children were living with the Williamses, he later testified that, "[I]t might have been" April, when he and his girlfriend went to the Williamses' home because he was suspicious that the children had not been living with Laura. (Susan denied that Michael and his girlfriend came to her house in April 2014; she says they came in 2013, and that he was aware at that time that the children were at the Williamses' house sporadically during the end of 2013.) Michael said the Williamses explained to him that the children had been living with them for some time. Although Susan testified that the children had been living there since January 2014, Michael was "pretty sure that they had been living there since [Laura] went to treatment in October of 2013 when [he] was in jail." According to Michael, after speaking to the Williamses in April 2014, the three of them agreed that Michael would see the children every weekend. That arrangement "went really good . . . all summer long." Sometimes the children were even at Michael's house during the week. (According to Susan, from June to mid-October 2014, Michael exercised parenting time every other weekend and on Wednesdays.)

In the fall of 2014, Michael became aware of an incident where Laura was hospitalized--she had fallen in the tub and hit her head, she was unconscious and bleeding from the brain. Michael said he talked to Susan about Laura's hospitalization and learned that Laura went to treatment after that. Michael was told by Susan that "we were going . . . back to our divorce decree thing and we'd be doing every other weekend." That is when Michael filed his complaint to modify, and asked for custody on an interim basis. After the court denied his request for interim custody (order entered October 27, 2014), it was Michael's understanding that Laura "got cleaned up," "she wasn't drinking and she was over at [the Williamses] with my kids now living over there."

Michael conceded that beginning in the fall of 2014, he did not exercise his allotment of parenting time stating, "I was pretty hurt and very, very upset." "Not at the kids. It was just, you know, I deserved a little more respect than that[.]" Michael originally said that since then, he had not had either of the children, other than one dinner and one weekend in September 2015, but later, when called as a rebuttal witness on his own behalf, his counsel asked if he "had a visitation with

- 8 -

the kids in April of 2015," and Michael responded, "Yeah" (although Susan testified that Michael had two weekends of parenting time in April 2015). When asked why he had not exercised any parenting time since September, Michael responded, "[J]ust been pretty busy . . . working but mainly . . . I don't feel that it's always my responsibility to have to call . . . Sue . . . to ask for visitation for my children. . . . [I]n my opinion, I shouldn't even have to ask anybody because they are my kids and they should be with me . . . already."

Michael stated his primary mode of communication with Keaton is through Keaton's cell phone. Michael said in the past 12 months, he had telephoned his children on birthdays, holidays, "multiple times during the summer," and "just randomly." Michael called Keaton's cell phone number on his birthday and on Makenna's birthday (because she did not have a cell phone), but did not get to speak with either of them; he left messages, but did not receive a message or call back.

Michael testified that if he got custody of the children, they would continue to go to their same school at Norris. Michael's girlfriend worked "[p]robably within five to seven miles" of Norris, and she would be able to help transport Makenna to school---the school bus does not go to Michael's home in Lincoln, Nebraska.

Michael asked the court to consider giving him a credit with respect to child support he paid during periods of time that the children were not actually residing with Laura.

### (iv) In Camera Testimony

Keaton, age 16 at the time, and Makenna, age 12 at the time, testified in chambers with the judge and the attorneys present; a record was made and sealed. The court informed the children that their testimony would not be shared with their parents, and the court directed the attorneys to not discuss the children's testimony with their clients. Therefore, we will not recount it here. We have read and considered such testimony in our de novo review of the record.

### (b) Motions Following November Trial

On November 23, 2015, Laura and the Williamses filed a "Motion to Withdraw Rest and Present Additional Evidence." After a hearing in December, the court sustained the motion and scheduled the matter for an "additional hearing" in January 2016, "for a one hour trial"; but no further evidence was ever presented at that time. On February 18, Laura and the Williamses filed a "Motion to Submit Pending Matter for Determination by the Court." In their motion, they alleged that in January, "instead of presenting additional evidence" they "moved this Court" for an order permitting them to file additional pleadings. Laura and the Williamses stated that they "hereby withdraw" the November 2015 motion to present additional evidence and "hereby further withdraw the motion to withhold judgment and to permit [them] to file additional pleadings," and "hereby move this Court to make a determination based on evidence presented at the hearings held November 6 and 16, 2015."

Although Michael claims the district court erred in granting the joint motion of Laura and the Williamses to withdraw their rest and present additional evidence, we need not address that issue, because Laura and the Williamses subsequently withdrew their motion to withdraw their rest and present additional evidence, and they asked the court to "make a determination based on

evidence presented at the hearings held November 6 and 16, 2015." Accordingly, Michael's claim on this issue is moot.

### (c) Temporary Orders and Further Evidentiary Hearings

#### (i) April 2016 Temporary Order

On April 28, 2016, the district court filed a "Temporary Order." It noted that at trial Laura conceded that she was not a fit and proper person to have physical custody of the children, and that in Laura's opinion, the bests interests of the children would be served by placing the children with the Williamses. The order stated, in part:

> The credible evidence at trial indicates that [Michael] failed to exercise any of his parenting time from January 2014 to June 2014. Parenting time occurred from June 2014 to September 2014. From October 2014 to April 2015, [Michael] did not see his children. There were approximately two weekends of parenting time in April. [Michael] exercised no parenting time between May 2015 [and] September 2015. There was no parenting time with the children exercised from October 2015 to the time of trial. Accordingly, during that period of time, the children did not see their father in 16 out of those 23 months. [Michael] did not provide any credible explanation as to the reason he did not see his children during those 16 months.
>
> Since the children have been residing with [the Williamses], they have done well in school and have been involved in several extra-curricular activities. The children seem healthy, happy and well[-]adjusted at this stage of their lives.
>
> In deciding issues of physical and legal custody of these children, the Court needs to determine what is the best interest of Keaton and [Makenna][.]

The court acknowledged the parental preference doctrine, and that "'a court may not, in derogation of the superior right of a biological . . . parent, grant child custody to one who is not a biological . . . parent unless the biological . . . parent is unfit to have child custody or has legally lost the parental superior right to a child.'" But the court stated, "The record in this case shows that the majority of the parenting time that [Michael] chose not to exercise occurred during his pending complaint for modification of custody." "This evidence indicates to the Court that [Michael] appears to have little interest in being regularly involved in his children's lives." The court ordered "that the legal custody of Keaton and Makenna shall be placed, temporarily, with the Court," and that "[p]hysical custody of the children shall be placed with the [Williamses]." Michael was awarded temporary parenting time with the children every other weekend from Thursday at 4:30 p.m. until the following Monday at 8:30 a.m. Laura was also awarded temporary parenting time. The court's order concluded, "The matter shall be set for further hearing on October 20, 2016 . . . for one-half day for further evidence regarding this Court's temporary order."

#### (ii) October 2016 Hearing and Subsequent Order

In an order filed on March 16, 2017, the district court stated, "This matter came before the Court for trial on October 20, 2016[,] . . . pursuant to the temporary order entered by this Court on April 28, 2016." (Our record does not contain a bill of exceptions from the October 20 hearing because neither party requested that one be prepared for this appeal.) The district court noted in its

March 2017 order that Michael did not appear at the October 2016 hearing, but counsel appeared on his behalf. "Evidence was presented and the matter was taken under advisement." According to the district court's order, Susan testified at the hearing, "over defendant's objection," that Michael had not seen his children in a little over 1 year, had not requested to see his children, and had paid no child support. The order stated,

> Because of the Court's obvious concern regarding [Michael's] apparent lack of interest in being regularly involved in his children's lives, the temporary order increased [Michael's] parenting time to every other weekend from Thursday at 4:30 p.m. to Monday at 8:30 a.m. [*Michael*] *has obviously not taken advantage of this increase in parenting time or in any parenting time for that matter.*

> In considering the modification of a child custody order, the moving party has the burden of proving that a material change in circumstance has occurred and that changing custody is in the children's best interest. *It is in relation to this latter requirement that has caused this Court to have sincere concerns as to whether granting the custody of the children to* [*Michael*] *would be in their best interest.*

(Emphasis supplied.) The court noted the parental preference doctrine, but said:

> This matter is, in the mind of the Court, at a tipping point. Over the past 4 years, [Michael] has exercised parenting time for only 9 of those months with no parenting time or contact with his children in over 18 months. The Court obviously recognizes the rights of a fit, proper and suitable parent, but has come to the conclusion that further evidence is required in order to make a determination that [Michael] has met that standard and that it would be in the best interests of his children to be removed from the stable and loving environment they have lived in for the past three years.

The court therefore "ordered that the temporary order will remain in effect. The matter will be set for final hearing on May 3, 2017." In an "Order re Docket Entry" filed on May 1, a different district court judge (now in charge of the case due to the first judge's recusal) set the further evidentiary hearing for May 15.

### (iii) May 2017 Hearing

At the further evidentiary hearing on May 15, 2017, Michael did not appear. Michael's counsel did appear and objected to the proceeding, claiming that the court was not empowered to conduct the hearing because there had already been a trial. Counsel said, "Both parties have actually stipulated on the record that the matter be submitted for a final judgment so that there can be an appeal"; "but there has not been a final judgment." Counsel stated that Neb. Const. art. I, § 3, required that "courts be opened and every person shall have a remedy by due course of law and justice administered without denial or delay." (We note this actually comes from Neb. Const. art. I, § 13). Counsel then argued that because trial was held in November 2015, and no final judgment had been entered, "justice has not been administered without denial or delay." He asserted "the court should enter final judgment based upon the evidence presented at the trial in November 2015," and he believed the May 2017 proceedings were "a nullity." The district court

responded by saying, "We've talked about this. The parties have submitted some letter briefs to me on authority." The court continued:

> This is a court of equity. I think it would be proper for me to take additional evidence in this case. I think it proper for me, after reviewing the submissions of the attorneys regarding the various issues and whether I can proceed, I just think it's proper to proceed, take evidence today, and then do my best to get a final order out so that the parties can proceed on that final order.

The hearing then continued.

The district court once again heard testimony from the children in chambers. The court assured the children that their testimony would not be shared with their parents or grandparents, and the attorneys were ordered not to disclose such testimony to their clients. Therefore, we will not recount it here, other than to note that their testimony primarily related to when they had contact with their parents. We have read and considered their entire testimony in our de novo review of the record.

Susan testified in open court that Michael had not seen the children since September 2015. She did acknowledge that in April 2017, Michael had contacted her about seeing the children, but that on the advice of counsel she refused him; she acknowledged that her counsel advised her that Michael had "meth" charges pending and that they wanted Michael to apply to the court so that there could be a showing that he was not under the influence of meth when he had the children.

### (d) June 2017 Order

The district court filed its order on June 14, 2017. The court noted that Laura had "admitted and continues to acknowledge that she is not ready or able to have the care, custody, and control of the minor children." The court found that Laura "is not fit at this time to have the children under her direct control and supervision." The court also found that Michael "has had a poor history of exercising his parenting time or actually being meaningfully involved in his children's lives for a rather significant time." Michael "has not engaged in the performance of his reasonable parental obligations (aside from paying some child support) and there is nothing in the record to suggest that circumstance will abate." "There is little evidence that [Michael] has made honest attempts to contact the children or even be peripherally involved in their lives." The court found "the record supports the claim of the [Williamses] (and [Laura]) that [Michael] is unfit to exercise his superior rights over the [Williamses] as to the care, custody, and control of the minor children." The court said, "Even assuming that the [Williamses] did not meet their burden to show [Michael] unfit, the prayer of the [Williamses] should have been granted" because it was in the children's best interests to remain in the care, custody, and control of the Williamses. The court granted the legal and physical custody of the children to the Williamses, subject to reasonable rights of parenting time for Laura and Michael, as set forth in an attached parenting plan.

On June 19, 2017, Michael filed a motion to alter or amend the order filed June 14. In an order filed on August 23, the district court generally rejected Michael's arguments with regard to custody and the Williamses' intervention in the action. The court did agree with Michael's argument that a child support worksheet should be attached to the June order, and amended the June 14 order accordingly.

Michael argues that the district court erred in not permanently awarding him the sole legal and physical custody of the children in April 2016, when the court instead placed temporary legal custody with the court and physical custody with the Williamses, and ordered more evidence to be given. He claims "[t]his was not merely erroneous, it was conscience-shocking." Brief for appellant at 42. Michael contends that the district court "had no authority to *sua sponte* enter any 'temporary' orders or order more evidence to be given after a trial on the merits was held [in November 2015] and the parties had rested their cases and the matter had been submitted." *Id*. at 43 (emphasis omitted).

Michael cites to Neb. Const. art. I, § 13, for the proposition that every person shall "have a remedy by due course of law and justice administered without denial or delay," and claims he did not receive such by way of the April 2016 "Temporary Order." Brief for appellant at 44. However, even though Michael claims the April order violated his constitutional rights, he must not have thought his rights were so substantially affected as to constitute a final order pursuant to Neb. Rev. Stat. § 25-1902 (Reissue 2016), because he did not appeal from that order. (We note that Michael did file an application for leave to commence an original mandamus action against the trial judge with the Nebraska Supreme Court in July 2016--claiming the trial judge "refused to render judgment" and instead, "purported to enter a 'Temporary Order'" and "mandated that a 'further hearing'" be held--but Michael's application was denied.) Nor did he appeal from the March 2017 order which continued custody with the Williamses.

At the May 2017 hearing, Michael challenged the court's authority to have an additional hearing, and the district court stated, "This is a court of equity." In his brief on appeal, Michael cites to no authority for his assertion that the court could not enter a temporary custody order until it could obtain further evidence. But see *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002) (a trial court may properly take temporary legal custody of a child when it is unsure either parent is fit). See, also, *State ex rel. Reitz v. Ringer,* 244 Neb. 976, 510 N.W.2d 294 (1994), *overruled in part on other grounds, Cross v. Perreten*, 257 Neb. 776, 600 N.W.2d 780 (1999). In *State ex rel. Reitz v. Ringer*, a contempt and modification of custody action, the district court took temporary custody of the child, but placed physical custody with the child's paternal grandparents, so that the court could further investigate the issue of permanent custody; there were questions about the father's fitness and the court knew the mother was going to be put in jail for contempt.

In both its April 2016 and March 2017 orders, the district court acknowledged the parental preference doctrine, and the notion that a fit, proper, and suitable parent has superior rights to custody of his or her child. But in both orders, the court was concerned about Michael's lack of interest in being involved in his children's lives. The court recounted the evidence that from January 2014 to the time of trial in November 2015, Michael had not seen his children during 16 out of those 23 months, and that a majority of the parenting time that he chose not to exercise occurred during his complaint for modification. And the evidence at the October 2016 hearing was that Michael had not seen, or requested to see, the children in over a year. In both the April 2016 and March 2017 orders, the court granted Michael increased parenting time (compared to the parenting time awarded to him in the 2009 divorce decree), apparently in an effort to see how

Michael would respond to the additional time. The court obviously had concerns about Michael's fitness and the children's best interests. Thus, under the circumstances of this case, the district court did not abuse its discretion when it did not award permanent custody to Michael in April 2016 and instead issued temporary orders and conducted further evidentiary hearings. The additional time favored Michael, in that he could have demonstrated to the court that he was ready and capable of being a full-time parent. Instead, he barely kept in touch with his children.

Additionally, Michael's rights to due process and fundamental fairness were not violated. He was given notice and an opportunity to be heard. He could have presented additional evidence at the October 2016 or May 2017 hearings, but chose not to do so.

### (f) Did District Court Err by Awarding Permanent Custody to Williamses?

Michael argues the district court erred in permanently awarding the Williamses legal and physical custody of the children in the June 2017 order.

Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Whilde v. Whilde*, 298 Neb. 473, 904 N.W.2d 695 (2017). In this case, there had been a material change in circumstances showing that the custodial parent was unfit; Laura conceded that she was unfit. But the best interests of the child are the court's paramount concern. *Tremain v. Tremain*, 264 Neb. 328, 646 N.W.2d 661 (2002).

In determining a child's best interests under Neb. Rev. Stat. § 42-364 (Reissue 2016), courts may consider factors such as general considerations of moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and the parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; parental capacity to provide physical care and satisfy educational needs of the child; and many other factors relevant to the general health, welfare, and well-being of the child. *Schmeidler v. Schmeidler*, 25 Neb. App. 802, 912 N.W.2d 278 (2018). Additionally,

> Under the parental preference principle, a parent's natural right to the custody of his or her children trumps the interest of strangers to the parent-child relationship and the preferences of the child. Although the question present in every child custody case is the best interests of the child, a court cannot overlook or disregard that the best interests standard is subject to the overriding recognition that the relationship between parent and child is constitutionally protected. The U.S. Supreme Court has held that due process of law requires a parent to be granted a hearing on his or her fitness as a parent before being deprived of custody. . . .
>
> Parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which has caused, or probably will result in, detriment to a child's well-being. Absent circumstances which terminate a parent's constitutionally protected right to care for his or her child, due regard for that right requires that a biological or adoptive parent be presumptively regarded as the proper guardian for his or her child. The courts may not

- 14 -

properly deprive a parent of the custody of a minor child unless it is affirmatively shown that such parent is unfit to perform the duties imposed by the relationship or has forfeited that right.

*Farnsworth v. Farnsworth*, 276 Neb. 653, 657-58, 756 N.W.2d 522, 525-26 (2008). Clear and convincing evidence of substantial, continuous, and repeated neglect of a child must be shown in order to overcome the parent's superior right. *Id.*

In the instant case the district court clearly and repeatedly considered the parental preference doctrine, and Michael's superior right to Makenna (remembering that she is the only child still at issue in this appeal). Michael claims the district court judge "demonstrated a clear bias and failure to remain impartial" at the November 16, 2015, hearing because the judge asked Michael why he thought it was in the best interests of the children to be placed with him rather than with their grandparents. Brief for appellant at 36. Michael claims the question was "entirely irrelevant and argumentative, as Michael was the natural parent." *Id.* We disagree with Michael's characterization of the court's inquiry. A child's best interests is the court's paramount concern, and a parent is often asked to explain why awarding custody to him or her would be in a child's best interests; we find no merit to this argument.

As to the June 2017 order, the district court found that Michael had a "poor history of exercising his parenting time or actually being meaningfully involved in [Makenna's] life for a significant period of time," and found that "[t]here does not appear to be any evidence to suggest that [Michael] is ready to assume the parenting role of [Makenna] at this time." The district court ultimately determined that Michael was "unfit to exercise his superior rights over the [Williamses] as to the care, custody, and control" of Makenna. We agree.

The evidence at trial was that Michael either exercised parenting time "once or twice" from January to April 2014 (his testimony) or did not exercise parenting time from January to June (Susan's testimony). There is no dispute that parenting time occurred from June to September (according to Michael, this took place every weekend, but according to Susan, this took place every other weekend and on Wednesdays). However, from October 2014 to April 2015, Michael did not see Makenna. There were approximately two weekends of parenting time in April. Michael exercised no parenting time between May and September. In September, he had one dinner and one weekend of parenting time with Makenna. Michael exercised no parenting time with Makenna from October 2015 to the time of the May 2017 hearing (although he made one request for parenting time in April 2017, which was denied by Susan on advice of counsel because Michael purportedly had "meth" charges pending; the record reveals that the first judge in this case had to recuse himself in April because Michael applied to "drug court").

On our de novo review of the record, we find Michael's extremely poor record of exercising his parenting time is clear and convincing evidence of substantial, continuous, and repeated neglect of Makenna by Michael which overcomes Michael's superior right to custody.

Having found Michael to be unfit, we find the district court did not abuse its discretion in awarding legal and physical custody of Makenna to the Williamses; such an award was in Makenna's best interests. Accordingly, we also find that the district court did not abuse its discretion in overruling Michael's motion to alter or amend judgment with regard to custody.

### (g) Delegation of Authority Regarding Parenting Time

Although the district court awarded custody of Makenna to the Williamses, it granted Michael reasonable rights of parenting time as set forth in an attached parenting plan. That parenting plan states:

> The natural parents may have parenting time with the minor children during the following times: each weekend, each holiday (including all secular and religious holidays), and each summer, provided that the natural parent provides reasonable notice and advance request to the [Williamses] *and the* [*Williamses*] *agree with the request.* If there is not agreement, the parents shall follow the provisions of remediation below.

(Emphasis supplied.) Michael argues the district court erred by delegating to the Williamses the court's sole authority and responsibility to determine the time, manner, and extent of parenting time between Michael and Makenna. We note that although the court provided general timeframes for parenting time, it left the final authority to the Williamses to approve any requested parenting time by either parent. It is true that this would not be consistent with the legal proposition that it is the sole responsibility of the district court to determine questions of parenting time regarding the child according to his or her best interests, including the time, manner, and extent of parenting time; this independent responsibility cannot be delegated. See *Schmeidler v. Schmeidler*, 25 Neb. App. 802, 912 N.W.2d 278 (2018). See, also, *Barth v. Barth*, 22 Neb. App. 241, 851 N.W.2d 104 (2014) (setting time, manner, and extent of visitation is solely duty of court). Although this case involves parents who have been found unfit, we nevertheless conclude the existing authority does not permit the district court to delegate to the Williamses the final decision regarding parenting time. Therefore, we remand the issue of Michael's parenting time back to the district court with directions to set such parenting time in accordance with the authority cited.

### 4. ATTORNEY FEES

Michael argues that the district court erred in not awarding him attorney fees. Customarily, attorney fees are awarded only to prevailing parties or assessed against those who file frivolous suits. *Schriner v. Schriner*, 25 Neb. App. 165, 903 N.W.2d 691 (2017). Given Michael's overall lack of success in these proceedings, the district court did not abuse its discretion when it did not award attorney fees.

### 5. CONTEMPT ACTION

### (a) Contempt Proceedings

In August 2016, the State filed against Michael a "Motion for an Order to Show Cause and to Appear." According to the State, Michael was delinquent in his child support in an amount greater or equal to the support due and payable for a one month period of time. In September, the "District Court Referee" entered an order to show cause and appear, ordering Michael to appear on October 6 and show cause why he should not be found guilty and sentenced for contempt for willfully and contumaciously having failed and refused to pay court-ordered child support.

In an order filed on October 6, 2016, the district court referee ordered Michael to "appear for further proceedings [on December 12] to review the child support payments on the Order to

Show Cause." In an order filed on December 13, the district court referee ordered Michael to "appear for further proceedings [on February 6, 2017] to review the child support payments on the Order to Show Cause." On February 7, 2017, the district court for Lancaster County issued a bench warrant for Michael, for failing to appear on February 6 to answer on the order to show cause. Michael was arrested on February 9. That same day, the district court appointed an attorney to represent Michael; the appointed attorney was not the attorney who represented Michael in his ongoing modification action.

In an order filed on February 9, 2017, the district court stated that a hearing was held on the September 7, 2016, order to show cause, Michael was represented by counsel, and he admitted to being in willful contempt of the child support order. The court found Michael to be in contempt of court, and also found that he had the ability to comply with the purge order. Michael was "committed to the Lancaster County jail for 30 days," but execution of the sentence was suspended so long as he paid $875 per month on current child support and $50 "on arrearage" commencing March 1; if Michael complied with the payment schedule for 12 consecutive months, he would be purged of contempt and the sentence would be deemed null and void. No appeal was taken from that order.

Approximately four months later, on June 19, 2017, Michael filed a "Motion to Vacate and Strike." He claimed the order to show cause and appear filed on September 7, 2016, the order to appear filed on October 6, the order to appear filed on December 13, and the order filed on February 9, 2017, were "void and should be vacated and stricken from the Court's file." As to the orders filed on September 7, October 6, and December 13, Michael claimed they are void "because they were not entered by the Court, but rather by the Court's referee, who had no authority to issue them." And "[b]ecause it was a factual and legal impossibility" for Michael to comply with those orders, the court's bench warrant filed on February 7, 2017, "was necessarily without basis in fact or law." He then claimed that because the bench warrant "was without basis in fact or law, the proceedings further to the 'Bench Warrant' were a nullity."

In the order filed on August 23, 2017, the district court denied Michael's motion to vacate and strike.

(b) Michael's Claim on Appeal

Although jurisdiction was not raised by either party, before deciding the merits of an appeal, an appellate court must determine if it has jurisdiction. *Jesse B. v. Tylee H.*, 293 Neb. 973, 883 N.W.2d 1 (2016). Michael did not appeal within 30 days of the February 9, 2017, order which found him in contempt and sentenced him to jail, with the ability to suspend the sentence so long as he complied with the purge order. See, *McCullough v. McCullough*, 299 Neb. 719, 910 N.W.2d 515 (2018) (order of contempt is final, appealable order); *Tilson v. Tilson*, 299 Neb. 64, 907 N.W.2d 31 (2018) (to vest appellate court with jurisdiction, notice of appeal must be filed within 30 days of entry of final order).

However, Michael argues the district court erred in denying his motion to vacate and strike the orders to show cause and appear and the final contempt order, because the orders to show cause and appear, upon which the bench warrant and order of contempt were based, were void.

A void order is a nullity which cannot constitute a judgment or final order that confers appellate jurisdiction on this court. But an appellate court has the power to determine

whether it lacks jurisdiction over an appeal because the lower court lacked jurisdiction to enter the order; to vacate a void order; and, if necessary, to remand the cause with appropriate directions.

*In re Interest of Trey H.*, 281 Neb. 760, 766-67, 798 N.W.2d 607, 613 (2011).

Michael contends the September 7, 2016 "Order to Show Cause and Appear," and the October 6 and December 13 "Order[s] to Appear" "are void because they were not made by anybody with authority to make them." Brief for appellant at 47. He contends the orders were made by a district court referee who was not appointed by the district court as required by Neb. Rev. Stat. § 43-1609(2) (Supp. 2017).

Section 43-1609 states, in relevant part, that child support referees "shall be appointed when necessary by the district courts . . . to meet the requirements of federal law relating to expediting the establishment, modification, enforcement, and collection of child, spousal, or medical support[.]" Child support referees "shall be appointed by order of the district court[.]" § 43-1609(2). Neb. Rev. Stat. § 43-1611 (Supp. 2017) also provides:

A district court . . . *may by rule or order refer or assign any and all matters* regarding the establishment, modification, enforcement, and collection of child, spousal, or medical support, . . . *to a child support referee* for findings and recommendations.

(Emphasis supplied.)

The district court for Lancaster County is in the Third Judicial District, and that judicial district has in fact adopted a rule for this purpose. The Rules of Dist. Ct. of Third Jud. Dist. 3-11 (rev. 2003) states:

A. Intent. . . . *It is determined that the appointment of a child support referee is necessary to aid the court in meeting the case progression standards established by Nebraska Supreme Court rule and federal law.*

B. Appointment. *Each referee shall be appointed by order of the judges of the court and shall be an attorney in good standing admitted to the practice of law in the State of Nebraska. . . .*

C. Duties. *The referee shall hear matters pertaining to (1)* the establishment, modification, *enforcement and collection of child/spousal support*; (2) paternity; and (3) all other matters permitted by law and assigned by the court. *The referee shall have the power to summon and enforce the attendance of parties* and witnesses, administer all necessary oaths, supervise pretrial preparation pursuant to the rules of discovery, grant continuances and adjournments, recommend the appointment of counsel for indigent parties and carry out any other duties permitted by law and assigned by the district court. . . .

(Emphasis supplied.)

A similar grant of authority is set forth in the Nebraska Supreme Court's child support referee rules found in Neb. Ct. R. §§ 4-101 to 4-111 (rev. 2008). Despite the plain language effectuating a general appointment of a child support referee contained in the Third Judicial District's rule set forth above, Michael nevertheless suggests that a referee must be appointed on

- 18 -

a case-by-case basis. However, as noted by the State, "There is no such requirement in Nebraska Law." Brief for appellee State at 5-6. As the State aptly points out,

> [T]he totality of . . . § 43-1609 is about the appointment of a child support referee by the district court to "meet the requirement of federal law relating to expediting the establishment, modification, enforcement, and collection of child, spousal, or medical support and protection orders," as well as the qualifications of a child support referee, the oath of the child support referee, removal of the child support referee, and contracting with attorneys to perform the duties of the referee in certain situation. . . . § 43-1609(1)-(4). . . . [T]he plain language indicates that this statute is about the appointment of a specific person to serve in the capacity of child support referee in order to handle certain types of cases on behalf of the district court.

Brief for appellee State at 6. "To read this statute to require a case-by-case appointment of the referee to individual cases would defeat the stated purpose of the referee to expedite the enforcement of child support orders." *Id.*

Finally, Michael claims that "[b]ecause a modification action was pending at all times when the referee purported to act, and because non-child support issues were raised, Local Rule 3-9.I could not have operated as an appointment of a referee." Brief for appellant at 47. Rules of Dist. Ct. of Third Jud. Dist. 3-9 (rev. 2013), regarding domestic case progression, states in relevant part:

> A. Application. This Rule 3-9 shall apply to all cases classified by the State Court Administrator as a domestic case, including, without limitation, divorce; paternity; grandparent visitation; any matter within the court's jurisdiction which involves child custody, parenting time, or support; or any matter governed by the Parenting Act.
>
> . . . .
>
> I. Modification Cases. . . . Trials, hearings and pretrial matters on contested child support issues in which a child support order already exists shall be conducted by the district court referee. *This does not apply to motions, applications or petitions in which non-child support issues are also raised.* All scheduling matters of cases referred to the referee shall be presented to the referee. Matters assigned to the referee upon which the parties have reached written agreement may be submitted directly to the district court judge to whom the case is assigned, accompanied by an appropriate order.

(Emphasis supplied.)

However, the State's contempt action against Michael was a separate action from the modification action between Michael, Laura, and the Williamses; and in the contempt action, the only issue was child support. Therefore, the italicized language relied on by Michael is inapplicable. Accordingly, it is the first sentence of subsection I which applies, and because a child support order already existed, the child support contempt action "shall be conducted by the district court referee."

Pursuant to the rules and statutory authority set forth above, the district court referee in this case had the authority to issue the September 7, 2016 "Order to Show Cause and Appear," and the October 6 and December 13 "Order[s] to Appear," thus they are not void. Michael's argument that

the "'Bench Warrant' filed on February 7, 2017, was without basis in fact or law'" and that "the proceedings further to the 'Bench Warrant' were a nullity," brief for appellant at 48, were premised on his assertion that the earlier orders were void. Having found the earlier orders were not void, his argument necessarily fails. Accordingly, the district court did not err by denying Michael's motion to vacate and strike.

Because the orders in the contempt action were not void or a nullity, Michael had to appeal within 30 days of the February 9, 2017, order which found him in contempt. Michael did not appeal within 30 days, thus we are without jurisdiction to address any other issues regarding the contempt proceedings.

## VI. CONCLUSION

We remand the issue of Michael's parenting time back to the district court with directions to set such parenting time in accordance with this opinion. We affirm the remainder of the district court's orders at issue.

AFFIRMED IN PART, AND IN PART
REMANDED WITH DIRECTIONS.